IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          CASE NO. 12-02396

JEANETTE ANDUJAR CUMBA                          CHAPTER 13

    Debtor

OPINION AND ORDER

    This case is before the court upon the Chapter 13 Trustee's (hereinafter referred to as "Trustee") unfavorable report to the amended Chapter 13 plan dated March 31, 2013 (Docket No. 73) based upon lack of feasibility under 11 U.S.C. §1325(a)(6), and because the Trustee is unable to calculate the liquidation value and thus is unable to determine whether the Debtor complies with 11 U.S.C. §1325(a)(4), which is a requisite for confirmation of a plan as the Debtor has not assigned a value to a particular cause of action filed in state court, which has been listed in Schedule B (Personal Property). The Debtor filed her reply (Docket No. 76) arguing that in the instant case it is reasonable to list the value of the state lawsuit as "unknown" because it is difficult to assign a value to a pending or potential lawsuit and the Debtor has chosen the state exemptions which means that there is no exemption applicable to the cause of action of the Debtor at the state court. Subsequently, the Trustee filed an Objection to Plan Confirmation and Memorandum of Law in Support Thereof (Docket No. 79) and the Debtor filed her reply (Docket No. 80) to which the Trustee filed a sur-reply (Docket No. 84). For the reasons set forth below the court grants Trustee's motion and concludes that the Debtor must assign a value to the legal claim which she has included in Schedule B.

Jurisdiction

    The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(B) and (L). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

-1-

Facts and Procedural Background

On March 30, 2012, the Debtor filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code and a Chapter 13 plan (Docket No. 6). On April 3, 2012 the case was dismissed due to failure to file the statement of social security number (Docket No. 12). On April 17, 2012, the Debtor filed a motion requesting reconsideration of the dismissal order (Docket No. 17). On May 31, 2012, the court granted the Debtor's request for reconsideration of the order dismissing the case (Docket No. 21). The 341 meeting of creditors was held and closed on June 29, 2012 (Docket No. 33).

On July 20, 2012, the Trustee filed an *Unfavorable Report on Proposed Plan Confirmation under §13*25 alleging that the plan dated March 30, 2012 fails the creditors' best interest test under 11 U.S.C. §1325(a)(4) because the Debtor claimed the Puerto Rico homestead exemptions in Schedule C and the Trustee will file his objection regarding this matter (Docket No. 42). On the same date, the Trustee filed his *Objection to Debtor's Claimed Exemptions* (Docket No. 43). On September 20, 2012, the Trustee's unopposed *Objection to Debtor's Claimed Exemptions* was granted (Docket No. 52). Subsequently, on September 27, 2012, the Trustee filed another *Unfavorable Report on Proposed Plan Confirmation under §1325* alleging that the plan dated March 30, 2012 fails the best interest of creditors' test under 11 U.S.C. §1325(a)(4) because the case's liquidation value was reassessed to take into consideration the unopposed objection to the local homestead exemption and thus the minimum base needed totals approximately $114,600 (Docket No. 54). On October 8, 2012, the Debtor filed a *Motion for Reconsideration of Order and Reply to Trustee's Objection to Puerto Rico Homestead Law and Puerto Rico Exemptions Law* (Docket No. 55).

On October 10, 2012, a plan confirmation hearing was held and continued without a date. The court granted the Debtor's request for reconsideration of order entered granting Trustee's objection to exemption (#55). The court took the contested matter concerning the homestead exemption under advisement for a decision on the merits. On January 25, 2013, the court entered an Opinion and Order directing the parties to file memoranda within the next 21 days on whether

or not the requirements of the 2011 PR Home Protection Act were complied with, and on any other outstanding objections to exemptions in each case which is not expressly addressed in this Opinion and Order (Docket No. 63). On February 15, 2013, the Trustee filed its *Position in Compliance with Order* acknowledging pre-petition compliance with the 2011 PR Home Protection Act (Docket No. 65). On February 22, 2013, the court ordered the allowance of the homestead exemption claimed by the Debtor because the Debtor complied pre-petition with the 2011 PR Home Protection Act (Docket No. 66).

On March 8, 2013, the Trustee filed a Favorable Report on Proposed Plan Confirmation under §1325 for the proposed plan dated March 30, 2012 (Docket No. 68). On March 31, 2013, the Debtor filed an Amended Schedule B (Personal Property) to include the following information regarding a state court action: "[c]ivil case No. DAC2012-0804 Teresita Arroyo Morales et als. V. Municipality of Cataño et. Als. Complaint claiming torts and restitution of moneys paid to Developer and Banks because mortgage was not perfected due to error in inscription of segregation of housing project lots of Urb. Vista al Mar, where Debtor's property and residence are is located." The Debtor listed the claim as a personal property with an unknown value (Docket No. 69). On the same date, the Debtor filed an amended plan dated March 31, 2013 to provide that any proceeds from this lawsuit will be used entirely to fund the plan (Docket No. 71).

On May 7, 2013, the Trustee filed an *Unfavorable Report on Proposed Plan Confirmation under §1325* alleging the following deficiencies: (i) lack of feasibility pursuant to 11 U.S.C. §1325(a)(6) and (ii) the Debtor has failed to assign a value to the cause of action pending in local court. The liquidation value cannot be determined until a value is assigned to their legal claim (Docket No. 73). On May 13, 2013, the court ordered the Debtor to reply withib 21 days to the Trustee's unfavorable recommendation (Docket No. 74). On June 5, 2013, the Debtor filed her *Motion in Compliance of Order, Reply to Trustee Unfavorable Report and Request for Confirmation of Amended Chapter 13 Payment Plan Dated 3/31/2013* alleging that she listed the value of her legal claim as "unknown" because there is no tangible amount

determined and Debtor has not claimed an exemption on this claim and all the proceeds, if any, will be devoted to fund the plan (Docket No. 76). On June 7, 2013, the court scheduled a confirmation hearing for September 25, 2013. (Docket No. 77).

On September 23, 2013, the Trustee filed his *Objection to Plan Confirmation and Memorandum of Law in Support Thereof* arguing the following: (i) the Trustee is unable to determine the liquidation value in this case pursuant to 11 U.S.C. §1325(a)(4) because the Debtor has not assigned a value to her legal claim; (ii) causes of action are property of the estate and they have a value despite of the amount that can or will be awarded in the future; (iii) the Seventh Circuit in <u>Polis v. Getaways, Inc.</u> (<u>In re Polis</u>), 217 F. 3d 899, 903 (7th Cir. 2000) applied the following rationale to valuing legal claims: "[l]egal claims are assets whether or not they are assignable, especially when they are claims for money; as a first approximation, the value of Polis's claim is the judgment that she will obtain if she litigates and wins multiplied by the probability of that (to her) happy outcome. That is roughly how parties to money cases value them for purposes of determining whether to settle in advance of trial. They do so whether or not the claim is assignable; unassignable claims (tort claims, for example) command positive prices in the settlement 'market;'" (iv) since the liquidation value cannot be determined without taking into account the value of the Debtor's pending cause of action in local court, the Trustee is unable to determine if the proposed plan is sufficiently funded to pay the liquidation value; (v) the Chapter 13 Trustee has a limited time to administer the case, thus, if the Debtor was to receive the funds from the pending cause of action after receiving the discharge it would be a windfall; and (vi) the Debtor by failing to provide a value to the pending cause of action, and thus preventing creditors from participating in the revenues, does not comply with the good faith requirement under 11 U.S.C. §1325(a)(3) (Docket No. 79). On September 24, 2013, the Debtor filed her *Reply to Trustee's Objection to Plan Confirmation and Memorandum of Law and Request for Confirmation of Amended Chapter 13 Payment Plan Dated 03/31/2013* arguing the following: (i) this is not a claim for money that has a mostly certain nature, this a torts claim that depends on the credibility awarded by the state court to the plaintiffs; (ii) there is no uniform

procedure followed by the courts to value a cause of action; (iii) it is reasonable to list the value of the legal claim as "unknown" pursuant to recent court decisions according to the case of Ingram v. Thompson, 141 Wn. App. 287 (Wash. Ct. App. 2007); and (iv) in this case the proceeds (if any) received by the Debtor from the legal claim will be devoted entirely to fund the Chapter 13 plan, and thus, are excluded and excepted pursuant to 11 U.S.C. §1327(b) and (c) (Docket No. 80).

On September 25, 2013, the plan confirmation hearing was held and the court determined that the pending issue is whether the valuation of the pending civil action is mandatory. The court continued the confirmation hearing without a date (Docket No. 82).

On October 1, 2013, the Trustee filed a *Motion for Leave to File Sur-reply* (Docket No. 83). On October 1, 2013, the Trustee filed his *Sur-reply to Debtor's Reply to Trustee's Objection to Plan Confirmation and Memorandum of Law* (Docket No. 84). On October 8, 2013, the court granted the Trustee's *Motion for Leave to File Sur-reply* (Docket No. 86).

Applicable Law and Analysis

*Property of the estate in a Chapter 13 Case*

Property of the bankruptcy estate includes all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. §541(a)(1). In a Chapter 13 case, Section 1306[1] also includes as property of the estate property described in Section 541 that is acquired by the debtor after the petition is filed and post-petition earnings from services earned by the debtor. A debtor's pre-petition legal claim whether the same is unliquidated or settled at the time of the bankruptcy petition constitutes property of the estate.

---

[1] Section 1306(a) provides: "[p]roperty of the estate includes, in addition to the property specified in section 541 of this title—(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first." 11 U.S.C. §1325(a).

*Confirmation of a Chapter 13 Plan*

Confirmation of a Chapter 13 plan is governed by Section 1325. Section 1325(a)(4) provides in pertinent part: "[e]xcept as provided in subsection (b), the court shall confirm a plan if—… (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. §1325(a)(4). Section 1325(a)(4), referred to as the "best interest of creditors test," provides that unsecured creditors will be paid, at a minimum, the amount which they would be paid if the case were a hypothetical chapter 7 liquidation case.  The "best interest of creditors test" is designed to protect the unsecured creditors in Chapter 13 cases. "To determine compliance with the test, a hypothetical liquidation of the debtor's estate under Chapter 7 on the 'effective date of the plan' must be compared to the value on 'the effective date of the plan' of what the debtor proposes to distribute to the holders of allowed unsecured claims. Two mathematical calculations are required: (1) an estimate must be made of what would be available for distribution to unsecured claim holders in a Chapter 7 case; and (2) the distributions to unsecured claim holders under the proposed plan must be 'present valued' (discounted) as of the effective date of the plan." See Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §160.1 at ¶ [2], Rev. June 7, 2004, www. Ch13online.com. The proposed Chapter 13 plan must be present valued to compensate unsecured creditors for the delay in payments they would receive immediately in a liquidation proceeding. Moreover, for a Chapter 13 plan to satisfy the best interest of creditors test, "… the capitalized present value of all deferred payments proposed to be distributed, together with the present value of any other property proposed to be distributed, to the holder of an allowed unsecured claim, must equal at least the liquidation value of the nonexempt property of the estate apportionable to the holder of such allowed unsecured claim." See Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶1325.05[2][c] (16th ed. 2013). As part of the liquidation analysis calculation, the administrative expenses and the trustee's fees that would be incurred in a Chapter 7 must be deducted from the

valuation of estate assets. Generally the present value calculation under Section 1325(a)(4) is necessary only when the present valued (discounted) stream of payments to unsecured creditors is less than the Chapter 7 value. See In re Cook, 322 B.R. 336, 339, fn. 6 (Bankr. N.D. Ohio 2005).

In order to compare these two figures; namely, the discounted stream of payments that unsecured creditors would receive in a chapter 13 with the liquidation value of nonexempt estate assets in a chapter 7 asset case requires the valuation of property. "The standard for valuing property for purposes of §1325(a)(4) has been the subject of few reported decisions. Intuitively because the purpose of valuation is a hypothetical liquidation in a Chapter 7 case, property should be valued at what chapter 7 trustee would get—liquidation, foreclosure or forced sale value." See Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §160.1 at ¶ [27], Rev. June 7, 2004, www. Ch13online.com. "The valuation of claims in a hypothetical chapter 7 liquidation is 'not an exact science' because the process entails a considerable degree of speculation." In re W.R. Grace & Co., 475 B.R. 34, 142 (D. Del. 2012) (citing Affiliated Foods, 249 B.R. 770 at 788 (citing In re Sierra-Cal, 210 B.R. 168, 172 (Bankr. E.D. Cal. 1997)); Adelphia Commc'ns, Corp., 361 B.R. 337, 367 (Bankr. S.D.N.Y. 2007) (quoting In re Crowthers, 120 B.R. 279, 297-98 (Bankr. S.D.N.Y. 1900)); In re PC Liquidation Corp., 383 B.R. 856, 868 (E.D.N.Y. 2008) ("[T]he valuation of a hypothetical [C]hapter 7 liquidation is, by nature, inherently speculative[.]") (internal quotations and citations omitted). "Thus, the court need only make a well-reasoned estimate of the liquidation value that is supported by the evidence on the record. It is not necessary to itemize or specifically determine precise values during the estimation procedure. Requiring such precision would be entirely unrealistic because exact values could only be found if the debtor actually underwent Chapter 7 liquidation." In re W.R. Grace & Co., 475 B.R. 34 at 258 citing Affiliated Foods, 249 B.R. at 788.

The Debtor has below median income and thus, the plan duration is 36 months. The proposed plan dated March 31, 2013 is a base plan with a base of $3,600 and the general unsecured creditors will be paid pro-rata from any remaining funds. The Debtor in Schedule A

(Real Property) lists a real property which she values at $100,000 and which has no mortgage (or secured claim). The Debtor lists in her Amended Schedule B (Personal Property) assets in the amount of $1,011.15. The Debtor in her amended Schedule C (Property Claimed as Exempt) lists the total value of the claimed exemptions in the amount of $100,875 of which $100,000 is allocated to the homestead exemption pursuant to 31 P.R. Laws Ann. §§385(a); 1851-1857. The Debtor does not list any claims in Schedule D (Creditors Holding Secured Claims). In Schedule F (Creditors Holding Unsecured Nonpriority claims) the Debtor lists unsecured claims which total $147,209.83, of which $105,000.00 is allocated to a loan with Banco Popular de Puerto Rico for the purchase of a residence which has not been registered at the Property Registry. The court notes that in Schedule F, the Debtor lists a claim whose holder is Asociacion Empleados del ELA which is a 1996 personal loan in the amount of $16,727 and the same is subject to setoff. The Debtor does not list any creditors holding unsecured priority claims in Schedule E.

The Debtor's nonexempt assets (Schedule A + amended Schedule B – amended Schedule C), without considering the value of the legal claim, total $136.15. Thus, the liquidation analysis entails a comparison between the present value of $3,600 plus the present value of the legal claim versus the liquidation value of the Debtor's nonexempt assets in the amount of $136.15 plus the liquidation value of the legal claim.

This court finds that for the proposed plan to be confirmed, it must satisfy the requirements of Section 1325(a)(4). Thus, all of the property of the estate must have an assigned value in order to perform a liquidation analysis. The court notes that the Debtor lists in the state court complaint her alleged contractual and emotional damages in the total amount of $283,722 which is allocated in the following manner: (i) $43,722 which constitutes the totality of the monthly mortgage payments paid by the Debtor for a void mortgage loan; (ii) $60,000 in property improvements; (iii) $5,000 for the deposit and closing costs; (iv) $60,000 in damages for not being able to (being deprived) sell the real property; (v) $65,000 in damages for not being able to refinance the property and thus benefit from lower interest rates; and (vi) $50,000 due to

-8-

suffering and mental anguish because they are unable to fully enjoy their property and they are in a state of terrible uncertainty.

The court concludes that the value the Debtor must assign to her legal claim is an estimate of the current value she deems that particular claim is worth. The court understands the difficulty in assigning a current value to a legal claim, given that a market does not exist for such an asset. The court finds that the best guide for establishing the current value of a particular cause of action (legal claim) is to find out the monetary awards that the state courts have awarded to similar legal claims (causes of action) in the past. However, the Debtor is not required to personally fund distribution to unsecured creditors based upon the hypothetical recovery value of a legal claim. The requirement is to pay the amounts actually received.

<u>Conclusion</u>

For the foregoing reasons, the *Trustee's Objection to Plan Confirmation and Memorandum of Law in Support Thereof* is hereby granted. Therefore, the court orders the Debtor to file an amended Schedule B (Personal Property) which assigns a current value to her legal claim  in order for the Trustee to be able to calculate the liquidation analysis.

SO ORDERED.

In San Juan, Puerto Rico, this 28th day of January, 2014.

Enrique S. Lamoutte
United States Bankruptcy Judge